## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Service Employees International Union**
 **Local 32BJ**
**25 West 18th Street**
**New York, New York 10011**                     **Civil No.:**

    **Plaintiff,**

       **v.**

**Diversified Services Group Inc.**
**8630 Fenton Street**
**Silver Spring, Maryland 20910**

    **Defendant.**
_____/


## COMPLAINT

      Service Employees International Union, Local 32BJ (the "Union" or "Local

32BJ"), by its undersigned attorneys, hereby brings this Complaint to Compel

Arbitration, or in the alternative, to direct the Defendant Diversified Services

Group, Inc. ("Diversified") to comply with the contract it entered into with the

Union.  This action is brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 4

and Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §

185(a).

      In support of this Complaint, the Union alleges as follows:

1.     On or about July 27, 2011, Diversified entered into a contract with the Union

       entitled Memorandum of Understanding ("MOU"), a true and correct copy of

       which is attached as <u>Exhibit A, hereto</u>.  As set forth herein, the contract

required Diversified to assume a collective bargaining agreement, which collective bargaining agreement contains an arbitration clause requiring disputes under the collective bargaining agreement to be resolved through binding arbitration.  Despite its contractual obligations under the MOU, Diversified has refused to submit disputes under the collective bargaining agreement to arbitration, and in so doing and by other of its conduct has breached its contractual obligations under the MOU.

## PARTIES

2.      Local 32BJ is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(5), representing over 125,000 property service workers in more than eight states and the District of Columbia, including the property service employees who clean and maintain the Nebraska Avenue Complex in Washington, D.C. ("NAC").  Local 32BJ's headquarters are in New York City, at 25 W. 18th Street.  The Union also maintains an office in Washington, D.C.

3.      Defendant, with headquarters at 8630 Fenton Street, Silver Spring, Maryland, is a cleaning service contractor and an employer engaged in interstate commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(2).  Since on or about June 1, 2012, Defendant has provided contracted cleaning services at NAC.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to Section 301(a) of the LMRA, 29

U.S.C. §185(a), and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

5.     Venue lies within this judicial district pursuant to Section 301(a) of the

LMRA, 29 U.S.C. § 185(a).

### GENERAL ALLEGATIONS

### Diversified's Bid for the Cleaning and Maintenance Account at NAC

6.     In July 2011, the cleaning and maintenance services at NAC were provided

by East-West, Inc. ("East-West"), a cleaning contractor which employed

approximately twenty-three employees at NAC.  East-West has been party to

collective bargaining agreements with Local 32BJ that covered the terms and

conditions of employment of its cleaning and maintenance employees,

including those at NAC.

7.     In July 2011, Marc Banks, an agent of Diversified, advised a Local 32BJ

representative that the cleaning and maintenance work at NAC was out to

bid and that Diversified wanted to bid on the account.  Mr. Banks

understood, and so stated, that the cleaning and maintenance employees at

NAC were currently represented by Local 32BJ, and requested a copy of the

current seniority list.

8.     In response to Mr. Banks' request, the Union electronically forwarded a draft

of the MOU to Mr. Banks, advising, in the body of the e-mail, that the Union

would provide the requested list if Diversified agreed to the terms of the

MOU.  A true and correct copy of the Union's email, dated July 27, 2011, and

the appended draft MOU are attached as <u>Exhibit B,</u> hereto.

9.    That same day, Diversified executed the MOU and returned it electronically

to the Union.  Upon receipt of the executed MOU, the Union, by e-mail dated

July 27, 2011, provided the seniority list to Diversified. A true and correct

copy of the Union's email, dated July 27, 2012, and the appended Seniority

list, are attached as <u>Exhibit C,</u> hereto.

## The MOU

10.   The MOU sets forth the rights and obligations of Diversified and the Union,

when Diversified bids to obtain a cleaning or maintenance account where

incumbent employees are represented by Local 32BJ, and the rights and

obligations when Diversified is the successful bidder.

11.   Thus, paragraph 1 of the MOU memorializes that the "Employer intends to

submit bids for work in the jurisdiction of the Union, Washington DC,

including all DC District and Federal Government buildings, Montgomery

County Maryland, Baltimore County Maryland, and Northern Virginia sites

where the cleaning and maintenance employees are currently represented by

the Union."

12.   Paragraph 2 memorializes that it is Diversified's intent, when it is the

successful bidder, "to hire the incumbent employees and maintain their

current terms and conditions of employment."

4

13.     In paragraph 3, Diversified "agrees that it will assume the collective bargaining agreement in effect at the sites," whenever it is the successful bidder at a site where the employees are represented by Local 32BJ.

14.     In consideration for Diversified's promise to retain the incumbents, maintain their conditions of employment, and assume the collective bargaining agreement at the location, the Union, in paragraph 4, "agrees not to take any action, including leafleting or other public demonstrations, opposing the Employer's bid."

### After Successfully Obtaining the NAC Account, Diversified Discharges 17 out of 23 of the Incumbent Employees

15.     After executing the MOU, Diversified submitted a bid to secure the cleaning and maintenance account at NAC.

16.     As required by the MOU, the Union did not take action, in public or otherwise, to oppose Diversified's bid.

17.     On or about May 3, 2012, Mr. Banks advised the Union that Diversified was the successful bidder and would be taking over the cleaning and maintenance at NAC on or about June 1, 2012.

18.     On May 9, 2012, a Union representative forwarded a copy of the collective bargaining agreement in effect at the site, between the Union and the predecessor contractor, East-West, modified only to reflect an effective date of June 1, 2012 and to change the name of the employer from East-West to Diversified.  A true and correct copy of the electronic mail, dated May 9, 2012,

and the appended collective bargaining agreement are attached as <u>Exhibit D,</u> hereto.

19.    At a May 21, 2012 meeting with Mr. Banks and others representing Diversified, a Union representative responded to questions about the incumbent employees' current terms and conditions of employment.

20.    On or about June 1, 2012, Diversified replaced East-West as the cleaning and maintenance contractor at NAC, and no later than June 1, 2012, hired the twenty-three incumbent East-West employees.  The collective bargaining agreement in effect as of this date, between East-West and the Union, effective October 1, 2011 through September 14, 2014 (the "CBA"), is attached as <u>Exhibit E,</u> hereto.

## The Relevant CBA Provisions

21.    Article 16 of the CBA provides that "the employer shall only discipline or discharge employees for just cause."

22.    Article 17 of the CBA provides for a Grievance and Arbitration Procedure through which "all disputes, complaints or grievances in connection with the interpretation or application of the terms of this Agreement" must be resolved.

## The Discharges and the Union's Arbitration Demands

23.    On or about June 8, 2012, Diversified discharged incumbents Mercedes Villegas and Grecia Diaz de Rodriguez, and on or about June 12, 2012 discharged incumbents Pablo Cisneros, Francisco Cruz and Ana Martinez.

By initiation letters dated June 14, 2012, pursuant to CBA Article 17, the Union initiated written grievances on behalf of these employees, claiming that their discharges were without just cause.  A true and correct copy of these initiation letters are attached as <u>Exhibit F,</u> hereto.

24.     On June 13, 2012, a Union representative advised Mr. Banks that the MOU required Diversified to assume the CBA.

25.     By electronic email, Mr. Banks denied that Diversified was required to assume the CBA.

26.     On or about June 15, 2012, Diversified discharged incumbents Evelyn Mejia and Jose Romero.  By initiation letters dated June 18, 2012, pursuant to Article 17, the Union initiated written grievances on behalf of these employees, claiming that the discharges were without just cause.  A true and correct copy of these initiation letters are attached as <u>Exhibit G,</u> hereto.

27.     On or about June 19, 2012, Diversified discharged incumbents Candy Castillo and Susana Caldwell.  By initiation letters dated June 20, 2012, pursuant to Article 17, the Union initiated written grievances on behalf of these employees, claiming that the discharges were without just cause.  A true and correct copy of these initiation letters are attached as <u>Exhibit H,</u> hereto.

28.      On or about June 22, 2012, Diversified discharged incumbents Alfida Cebellos and Maria Munoz Guzman.  By initiation letters dated June 25, 2012, pursuant to Article 17, the Union initiated written grievances on behalf of these employees, claiming that the discharges were without just cause.  A

7

true and correct copy of these initiation letters are attached as <u>Exhibit I,</u> hereto.

29.   Between June 27 and June 29, 2012 Diversified discharged incumbents Jesus Barahona, Anolia Arias, Dannis Avilar, Elisa Sanchez-Rivas and Rosa Sanchez.  Pursuant to Article 17, the Union initiated grievances for Ms. Arias and Ms. Sanchez-Rivas, by initiation letters dated July 2, 2012. A true and correct copy of these initiation letters are attached as <u>Exhibit J,</u> hereto.

30.   By letter dated July 10, 2012, the Union consolidated the discharge grievances described in paragraph 23 through 29 above, and initiated discharge grievances on behalf of Dannis Avilar, Jesus Barahona, and Rosa Sanchez, alleging that their discharges were without just cause.  A true and correct copy of this initiation letter is attached as <u>Exhibit K,</u> hereto.

31.   Diversified failed to respond to any of the grievance initiation letters described in paragraphs 23 through 30 above, until July 10, 2012, when it responded by electronic mail, claiming that the "MOU does not constitute an enforceable agreement," and stating that it (1) had "no intention" of adopting the CBA; (2) had "no obligation" to participate in the grievance and arbitration process; and (3) refused to reinstate any of the discharged employees.  Diversified reiterated these positions in several subsequent conversations and correspondence.

32.   Pursuant to CBA Article 17, by letter dated July 26, 2012, the Union notified Diversified of its "Intent to Arbitrate."  A true and correct copy of this notice is attached as <u>Exhibit L,</u> hereto.

33.   By electronic email dated July 26, 2012, Diversified, in response, claimed that "Diversified has not entered into a collective bargaining agreement or a contractual agreement of any kind with Local 32BJ.  Consequently, we will not participate in any contract-based arbitration proceeding concerning the for-cause discharge" of the employees, whom it described as "at-will."

34.   By letter dated August 1, 2012, pursuant to CBA Article 17, the Union filed a request with the Federal Mediation and Conciliation Services ("FMCS") to arbitrate the unjust discharge of seventeen employees. A true and correct copy of this letter is attached as <u>Exhibit M,</u> hereto.

35.   By letter dated August 7, 2012 to the FMCS, Diversified claimed that it "does <u>not</u> have an arbitration agreement or a contractual agreement of any stripe with SEIU Local 37BJ[sic] at this time.  In light of the absence of such an agreement, DSG will not participate in the process of selecting an arbitrator. . ." Diversified did not mail its August 7, 2012 letter to the Union until September 20, 2012.  A true and correct copy of the August 7, 2012 letter and an envelope establishing the date that the letter was mailed to the Union are attached as <u>Exhibit N,</u> hereto.

## FIRST CAUSE OF ACTION

### To Compel Arbitration

### [29 U.S.C. §185(a) and 9 U.S.C. §4]

36. The Union incorporates by reference the allegations contained in Paragraphs 1 to 35 as if fully set forth herein.

37. Under paragraph 3 of the MOU, Diversified agreed to assume the CBA on June 1, 2012, including, without limitation, Article 16 which prohibits employee discharges without just cause and Article 17, the CBA's grievance and arbitration provisions.

38. Since the CBA covered the terms of employment of the cleaning and maintenance employees employed by Diversified at NAC, and Diversified lacked the just cause required under the CBA to terminate the seventeen incumbent employees, their discharges constitute a dispute arising from the interpretation or application of the CBA.

39. On July 10, 2012, the Union demanded arbitration of Diversified's unjust discharge of seventeen employees.

40. Although Diversified was obliged to arbitrate these disputes under the CBA, it has repeatedly refused to do so, in violation of its contractual obligations under 29 U.S.C. §185(a) and the Federal Arbitration Act, 9 U.S.C. §4.

41. Absent an order from this Court compelling arbitration Diversified will continue to refuse to arbitrate whether its discharge of some or all of the seventeen employees was without just cause.

## SECOND CAUSE OF ACTION

## Order to Comply with the MOU

## [29 U.S.C. §185(a)]

42. The Union incorporates by reference the allegations contained in Paragraphs 1 to 41 as if fully set forth herein.

43. Under paragraph 3 of the MOU, Diversified agreed to assume the CBA when it took over the cleaning and maintenance account at NAC.

44. Notwithstanding its obligation to do so and in breach of the MOU, Diversified has refused, and repeatedly continues to refuse, to honor its obligations under the CBA.

45. Absent an order from this Court, Diversified will continue to refuse to honor its obligations under the CBA and continue to breach the MOU.

## PRAYER FOR RELIEF

Wherefore, Local 32BJ prays that this Court:

1. Enter an order directing Diversified to submit to arbitration of all outstanding issues pursuant to Paragraph 3 of the Agreement and Article 17 of the CBA;

2. Enter an order directing Diversified to honor its obligations under the CBA and cease breaching the parties' MOU;

11

3.  Award to Local 32BJ its costs and reasonable attorneys fees expended in bringing this complaint under applicable law;

4.  Award to Local 32BJ any and all other relief as this Court deems just and proper.

Dated September 27, 2012                    Respectfully submitted,


   s/ Arlus J. Stephens
Michael T. Anderson (459617)
Arlus J. Stephens (478938)
Murphy Anderson PLLC
1701 K Street NW, Suite 210
Washington, D.C. 20006
Tel.: (202) 223-2620
Fax: (202) 223-8651

Counsel for Plaintiff SEIU Local 32BJ